UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CATHY J. WOODBURY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:11-CV-1049 (CEJ) |
| | ) | |
| COURTYARD MANAGEMENT | ) | |
| CORP., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendants' motion for summary judgment. Plaintiff has filed a response in opposition and the issues are fully briefed.

### I.  Background

Plaintiff Cathy J. Woodbury brings this action to recover compensatory and punitive damages for injuries she sustained in a fall from the balcony of her hotel room.  The defendants are Marriott International, Inc., Courtyard by Marriott II, L.P., and Courtyard Management Corporation (hereinafter referred to collectively as "the Courtyard defendants").

On December 9, 2007, plaintiff checked into a room on the second floor of the Courtyard by Marriott St. Louis Westport Hotel.  The room had an exterior balcony that was accessible by a door to which a "Charlie bar" security device was attached.  A Charlie bar is a three-quarter inch aluminum square bar that is affixed behind the sliding glass door on a hinge.  [Doc. # 44, p. 3].  If positioned horizontally, the hinged end affixes to the door frame and the other end lowers into a receptacle which

prevents opening the door from the outside. Id. When positioned vertically, a clip above the hinged end clicks into place to prevent the bar from lowering into the horizontal "locked" position. Id.

Because the hotel had a no-smoking policy, plaintiff was not allowed to smoke in her room. However, the hotel receptionist told plaintiff that she could smoke on the balcony outside her room as long as the door was closed. Several times that night, plaintiff went out to the balcony to smoke. Each time, plaintiff would lift the Charlie bar from its horizontal position to a vertical one, then fully close the balcony door behind her. The bar did not fall from the raised vertical position on any of these occasions.

At around 4:00 a.m. on December 10, 2007, plaintiff again went outside on the balcony to smoke. Plaintiff raised the Charlie bar and closed the door behind her in the same manner as she had done previously. After a few minutes, she attempted to return inside her room but could not open the door. She saw that the Charlie bar was in the down horizontal position, preventing the door from sliding open. Plaintiff states that she was in her pajamas at the time and the temperature was 30/. Plaintiff began yelling loudly, whistling, and pounding on the rain gutter to get someone's attention, but to no avail. After doing this for almost an hour, plaintiff tried to break the balcony glass door with her hand, again with no success. She finally decided to climb over the railing in an attempt to climb down the downspout, but instead she fell to the ground. Plaintiff sustained severe injuries including a fractured leg and fractured pelvis.

Prior to plaintiff's accident, there had been two other incidents of Charlie bar lockouts resulting in injury that occurred at Courtyard by Marriott hotels. The first incident occurred on February 22, 2007 in Illinois; the second on May 29, 2007 in

-2-

Massachusetts. [Doc. # 54, pp. 28-29].

Plaintiff alleges that her injuries resulted from the defendants' negligence in failing to maintain the Charlie bar and from their failing to warn of the device's defects. In the instant motion for summary judgment the Courtyard defendants argue that plaintiff's own negligence in attempting to climb down the downspout was the direct and proximate cause of her injuries. Alternatively, the defendants argue that they are entitled to partial summary judgment on plaintiff's request for punitive damages because plaintiff has not presented sufficient evidence of evil motive or reckless indifference to support the request.

## II. Legal Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. United of Omaha Life

-3-

Ins. Co. v. Honea, 458 F.3d 788, 791 (8th Cir. 2006) (quoting Fed. R. Civ. P. 56(e)).

Rule 56 "mandates the entry of summary judgment, after adequate time for discovery

and upon motion, against a party who fails to make a showing sufficient to establish

the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## III. Discussion

Because jurisdiction is premised on diversity of citizenship, the Court looks to

the substantive law of Missouri in analyzing the plaintiff's claims.

### A. Premises Liability Claim

The owner of a premises owes a duty to invitees to exercise ordinary and

reasonable care in making the premises safe. Rycraw v. White Castle Sys. Inc., 28

S.W.3d 495, 499 (Mo. Ct. App. 2000). To establish a claim of negligence based on

premises liability under Missouri law, the plaintiff must  present substantial evidence

that: (1) a dangerous condition existed on the premises of the defendant; (2) the

defendant knew or by using ordinary care should have known of the dangerous

condition; (3) the defendant failed to use ordinary care in removing or warning of the

danger; and (4) the plaintiff sustained injuries as a result of the dangerous condition.

Montgomery v. Wilson, 331 S.W.3d 332, 336 (Mo. Ct. App. 2011).

The Courtyard defendants do not deny that plaintiff may be able to prove the

first three elements of her premises liability claim.  [Doc. # 44, p. 8].  Instead, the

focus is on the fourth element, the causation requirement for a claim of negligence.

Plaintiff argues that the Courtyard defendants' failure to maintain and repair the Charlie

bar and/or failure to warn patrons of its alleged defectiveness was the actual and

-4-

proximate cause of her injuries.  [Doc. # 26, p. 6].  The Courtyard defendants argue that plaintiff's attempt to slide down the downspout was the sole proximate cause of her injuries.  [Doc. # 44, p. 8].

To establish causation in a claim of negligence, the plaintiff must prove that the defendant's conduct was both the cause in fact and proximate cause of the resulting injury.  Heffernan v. Reinhold, 73 S.W.3d 659, 664 (Mo. Ct. App. 2002).  The defendant's conduct is the cause in fact of the plaintiff's injuries if "but for" that conduct the injuries would not have occurred.  Id.  If the plaintiff's injury was the natural and probable consequence of the defendant's negligence, then that negligent act is also the proximate cause of the injury.  Id.  Proximate cause cannot be established if the resulting injury was too attenuated or far removed from the defendant's negligent conduct.  Id.  Missouri law also considers the foreseeability of the resulting injury as a limitation on the defendant's liability.  Tompkins v. Cervantes, 917 S.W.2d 186, 190 (Mo. Ct. App. 1996).  Proximate cause is typically a question for the jury to decide.  Stafford v. Drury Inns, Inc., 165 S.W.3d 494, 497 (Mo. Ct. App. 2005); Heffernan, 73 S.W.3d at 665.

The presence of any intervening or superseding cause affects the analysis of proximate cause. An intervening cause is any new and independent act that interrupts the causal chain between the defendant's conduct and the plaintiff's injury.  Heffernan, 73 S.W.3d at 665.  An intervening cause can rise to the level of a superseding cause if it severs the connection completely between the defendant's conduct and the plaintiff's injury, at which point it becomes the direct and proximate cause of the injury.  See id.; Tompkins, 917 S.W.2d at 190-91.  The Courtyard defendants

-5-

accurately assert that while proximate cause is typically within the province of the jury, a court properly interposes its judgment when an intervening cause eclipses the role the defendant's conduct played in the plaintiff's injury. Heffernan, 73 S.W.3d at 665; Tompkins, 917 S.W.2d at 190.

This case centers on the issue of comparative fault between the plaintiff and the Courtyard defendants, an evaluation that along with proximate cause is typically left for the jury. Kramer v. Chase Resorts, Inc., 777 S.W.2d 647, 651 (Mo. Ct. App. 1989); see Gustafson v. Benda, 661 S.W.2d 11, 15-16 (Mo. 1983) (en banc) (establishing the shift in Missouri from contributory negligence to comparative fault standard). Since the shift to a comparative fault standard, Missouri courts have ruled that an intervening cause which is a foreseeable consequence of the initial negligent conduct will not absolve the defendant from liability. Esmond v. Bituminous Cas. Corp., 23 S.W.3d 748, 753 (Mo. Ct. App. 2000); Plummer v. Dace, 818 S.W.2d 317, 321 (Mo. Ct. App. 1991); St. John Bank & Trust Co. v. City of St. John, 679 S.W.2d 399, 403 (Mo. Ct. App. 1984).

The Court finds that the Courtyard defendants have not demonstrated that plaintiff's actions were so independent from and unrelated to their alleged negligence as to absolve them from liability. In a somewhat analogous case, the Missouri Court of Appeals held that a young girl's act of running into the highway was not unrelated to the defendant bus driver's act of dropping the girl off in an unsafe area. Plummer, 818 S.W.2d at 321-22. The Missouri Court of Appeals made a similar assessment in St. John Bank & Trust Co. v. City of St. John where it was determined that the independent act of arson was not an unforeseeable result of failing to properly

-6-

supervise the police department. Id., 679 S.W.2d at 403. Like the plaintiffs' conduct in those cases, plaintiff's conduct here is directly related to the Courtyard defendants' own conduct, *i.e.*, negligent maintenance of the Charlie bar and the failure to warn of a malfunction that could result in a lockout. The relationship between the Charlie bar lockout and the resulting injuries is not so attenuated as to permit the Court to find that plaintiff's actions were the proximate cause of her injuries.

The Court rejects the Courtyard defendants' assertion that plaintiff's attempt to slide down the downspout was not foreseeable. In the two Charlie bar incidents that occurred several months before plaintiff's accident, patrons at Courtyard by Marriott hotels resorted to the same means of escape after being locked on a second floor balcony. The Court also declines the defendants' invitation to make a determination that plaintiff failed to exercise due care by not employing an available and safer method of getting help or escaping. Such a determination is reserved to the trier of fact. Kramer v. Chase Resorts, Inc., 777 S.W.2d 647, 651 (Mo. Ct. App. 1989); see Lacy v. Wright, 199 S.W.3d 780, 784 (Mo. Ct. App. 2006) (concluding that whether the plaintiff failed to look out and avoid a dangerous condition is determined at trial).

The Court concludes that the Courtyard defendants are not entitled to summary judgment on the premises liability claim.

### B. Punitive Damages Claim

In a negligence action, punitive damages may be awarded if the defendant's actions demonstrate evil motive, complete indifference or conscious disregard for others' safety. Alack v. Vic Tanny Int'l of Mo., Inc., 923 S.W.2d 330, 339 (Mo. 1996) (en banc); Stojkovic v. Weller, 802 S.W.2d 152, 155 (Mo. 1991) (en banc). A

-7-

plaintiff's entitlement to punitive damages must be established by clear and convincing evidence.  See Rodriguez v. Suzuki Motor Corp., 936 S.W.2d 104, 110-11 (Mo. 1996) (en banc).

Plaintiff has presented sufficient evidence from which a reasonable juror could find that the Courtyard defendants consciously disregarded the probability of injury. There is no dispute that there had been two prior Charlie bar lockouts that resulted in injuries.  The Courtyard defendants also do not dispute that there were no posted signs warning plaintiff of the possibility of a lockout due to a Charlie bar malfunction and plaintiff was not given any instructions on how to raise or use the Charlie bar. Additionally, plaintiff has presented the report of her expert witness, a mechanical engineer, who, approximately one year after the incident, found bending and deformation damage in the Charlie bars in two rooms at the Westport hotel, including the room plaintiff occupied. Furthermore, plaintiff has presented a March 28, 2008 memorandum issued by defendant Marriott International, Inc. that provides instructions on how to eliminate the possibility of Charlie bar lockouts in light of the "three incidents" in which hotel guests were trapped on their balconies. Pl. Ex. 7 [Doc. # 52].  Given this evidence, a reasonable juror could conclude that the Courtyard defendants were not only aware of a risk of injury posed by the defective Charlie bar device but consciously disregarded that risk.  Therefore, the Courtyard defendants are not entitled to summary judgment on the request for punitive damages.

\* \* \*

For the reasons discussed above,

**IT IS HEREBY ORDERED** that the motion of defendants Marriott International,

-8-

Inc., Courtyard by Marriott II, L.P., and Courtyard Management Corporation for summary judgment [Doc. #43] is **denied**.

CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 14th day of August, 2013.